# CINCINNATI

# SUPERIOR COURT

# Reporter.

GENERAL TERM,

OCTOBER, 1870.

## THE MERCHANTS' NATIONAL BANK *v.* PROCTER & GAMBLE.

The taking a Clearing-house manager's warrant for the surrender of a check, if the check be afterward dishonored, is not payment of the check, unless made so by special agreement, or by *laches* on the part of the holder.

The holder of a check is entitled to wait until the day following its date before presenting it to the drawee, without discharging the drawer from liability. Such delay is not *laches* in the holder.

A., the holder of a bank check drawn by B. on C., presents it, on the day of its date, at the Clearing-house, and, after adjustment of the accounts between the various banks (his own among the number), receives, in settlement, the warrant of the manager of the Clearing-house on C. The next day A., having presented the manager's warrant to C., who refuses payment, the original check is obtained from the Clearing-house, presented to C., dishonored, protested, and notice thereof given to B. *Held:* that B. is liable to A. for the amount of the check.

This was a suit on the following check:

"No. 5,676.  "CINCINNATI, *August* 25, 1869.

"Homans & Co. pay to Mr. N. S. Jones or order three thousand and twenty-five fifty-five-hundredths—$3,025.55.

"PROCTER & GAMBLE."

Indorsed " N. S. Jones."

C. S. C. REP. VOL. 1—1

The plaintiff alleges that Jones indorsed to it, and that it is the holder and owner of the check; that it was presented to Homans & Co. on the 26th of August, 1869, and payment demanded and refused, of which refusal defendants were notified the same day. The plaintiff asks judgment.

The defense is a denial that the plaintiff is the holder and owner of the check; they admit they drew the check, and aver that on the day of its date it was presented to Homans & Co. for payment, and paid in part in checks on other banks, in Cincinnati, and in part by a check of a voluntary association, known as the Clearing-house, and that being so paid, the check was on the day delivered by plaintiff to Homans & Co., who charged it up to the defendants and canceled it. They also allege that they had funds on that day on deposit with Homans & Co., more than sufficient to pay the check, and that on the next day, the 26th of August, 1869, Homans & Co. became insolvent. They deny that the check was legally presented on the 26th of August to Homans & Co. for payment, the same having been already paid, delivered to drawees, and canceled on the 25th of August; and they admit notice on the next day, of presentment, demand, and refusal to pay. They ask to be dismissed with costs.

An agreed statement of facts was filed, and the case was reserved to general term.

From the agreed statement of facts, it appears that the Clearing-house Association is a voluntary and unincorporated association of banks and bankers in Cincinnati, both incorporate and private, which had agreed to be governed by certain articles, which are set out fully. Among other things, these articles provide for officers of the association, suitable rooms, furniture, clerks, and prescribe the duties of the manager. Article fifth provides, "That the hour for making exchanges shall be at 2:15 P. M., when messengers from all the associated banks and bankers shall appear with their respective demands, separately made out against

each bank and banker, and the totals summed up. At three o'clock they shall return for settlement, when the manager shall issue his check or warrant upon the debtor banks or bankers for the balance, which checks shall, on presentation, be settled promptly by the debtor to the satisfaction of the creditor, in whose hands alone they are to be available."

For a long time previous to the failure of Homans & Co. the members of the association caused to be posted in their places of business in a conspicuous place, near their respective counters, a printed notice in illustrated type, to the effect that checks on banks in this city deposited after 1:45 P. M. could not be collected until the ensuing day, and were at the risk of the depositor until collected.

Article sixth provides, "In case of failure to respond promptly to the checks of the manager on the part of any member of the association, they shall be immediately returned to the manager, who shall call upon the other banks or bankers to make up the sum for which payment has been refused, in proportion to the checks upon the defaulting member sent into the Clearing-house at the preceding settlement, which sums so furnished or contributed shall constitute claims in the hands of the responding members respectively against the defaulting member; and it is hereby agreed that the checks received from the Clearing-house by the defaulting members shall be delivered, if required, to the members owning the same, without mutilation. The agency of the Clearing-house, it is understood, is only as a trustee, and in no case is the association to be held responsible for any loss that may occur."

The practical operation of the Clearing-house previous to, and on the date of the check sued on, was as follows:

There were tables in the room, divided into separate spaces for each bank. A clerk from each bank, at 2:15 each day, attended with the checks held against the other members; the checks against each bank pinned up in a separate package, with an accompanying ticket for each

package, with each check noted on it, and the whole footed up; and also with a separate list of the total amounts held against each bank also footed up for the use of the manager.

The manager charges each bank with the total of checks held against it by the other banks contained in the list made by its clerk in the Clearing-house and credits it with the total of checks held by it against the others.

It was agreed that the check sued on was drawn on the day of its date to the order of N. S. Jones, who indorsed the same and deposited it with plaintiffs before 12 M. of the same day, the amount being placed to his credit on the books of the plaintiff, who was the owner thereof; that on the same day this check, with a similar check on Homans & Co., for $70.15, was in the regular course of business sent by the plaintiff to the Clearing-house, making the total amount held by plaintiff against Homans & Co. that day $3,095; that on the same day Homans & Co. held against plaintiff on said Clearing-house a check for $581; that plaintiff on August 25, 1869, had credits on the books of the Clearing-house for $99,349.70, and a debit of $79,262, leaving a balance to its credit of $20,087.70; that Homans & Co. had credits on the same day on the books of the Clearing house $3,078, and debits $58,281, leaving a debit balance of $55,202; that the credit balance on that day due to plaintiff was settled by two checks drawn by the manager of the Clearing-house, one of which was as follows:

"CLEARING-HOUSE, *August* 25, 1869.

"HOMANS & Co.: Pay to Merchants' National Bank, or order, $12,207.        G. P. BASSETT, *Manager.*"

The two checks on Homans & Co. for $3,025.55 and $70.15, making $3,095.70, were sent to the Clearing-house by plaintiff, and were delivered to the clerk of Homans & Co. by plaintiff's clerk, and were taken by Homans & Co.'s clerk to their banking house, and were canceled, and were charged by Homans & Co. on their books to the account of defendants. On August 26, 1869, Homans & Co stopped payment.

The manager's check for $12,207.70 was on that morning

presented to Homans & Co. for payment, and refused. Thereon plaintiff returned the manager's check to the Clearing-house on the same day, and contributed an amount equal to the full amount of the checks held by it on Homans & Co. to make good the dishonored check. The plaintiff presented the check sued on during business hours at the office of Homans & Co., and demanded payment, which was refused, and the same was protested, and notice given to defendants.

It was agreed that all checks presented at the office of Homans & Co. on the 25th of August were paid.

*Stanley Matthews* and *King, Thompson & Avery*, for the plaintiff, made the following points:

1. That the holder of a check has, during business hours of the day following its date, to present it for payment. 2 Parsons on Notes and Bills, 72; Thompson on Bills, 119; Byles on Bills [13]; *Lovett* v. *Cornwell*, 6 Wend. 369; *Merchants' Bank* v. *Spicer*, 6 Wend. 443; *Mohawk Bank* v. *Broderick*, 13 Wend. 133; *Koffi* v. *Underhill*, 3 Sandf. Ch. 277.

2. That the drawer is bound, unless he suffers loss through the *laches* of the holder, or a substitution is made of some third party as the debtor instead of the drawer, or the bank is so dealt with as to make it the debtor to the loss of the drawer.

3. That novation is entirely a matter of agreement. 2 Am. Leading Cases, 241 (notes); *Bottomley* v. *Untall*, 5 C. B. [N. S.] 122; *In re L. B.* v. *S. S. Bank*, 11 Jur. [N. S.] 216.

4. That taking a check in payment of a bill does not operate as an absolute payment, if the check is dishonored, unless the drawer suffers loss through the *laches* of the holder. *Vernon* v. *Bouverie*, 2 Show. 296; *Hoar* v. *Chute*, 15 Johns. 224; *Powell* v. *Roach*, 6 Esp. 76; *Olcutt* v. *Rathbone*, 5 Wend. 490; *Everett* v. *Collins*, 2 Campb. 515; *Gillard* v. *Wise*, 5 B. & C. 134; *Russell* v. *Hankey*, 6 Term R. 12; *Stringfield* v. *Lane-barre*, 16 L. T. (N. S.) 461.

5. Wherever a check has been received in payment of a

bill by the holder, it is not the receipt of the check which discharges the drawer and indorsers, but the whole stress is laid upon the delivery of the bill to the acceptor, which disables the former holder from producing it when he calls upon the drawer and indorsers for payment.   Byles on Bills, [177]; Chitty on Bills, 433; Story on Bills, section 419; Story on Notes, section 389 n; Thompson on Bills, 256.

6. That the Clearing-house warrants are not checks or contracts at all, but mere certificates, and therefore no novation or payment could have taken place.

7. That the drawer of a check is the principal debtor. Parsons' Merc. Law, 90; Smith's Merc. Law, 248, notes; 2 Parsons on Bills and Notes, 58; Byles on Bills [10], notes; *In re Brown,* 2 Story's R. 502.

8. That if the check on the plaintiff, sent into the Clearing-house by Homans & Co. was a partial payment of the check in suit, the demand on the 26th of the full amount by the plaintiff from the defendants is no defense, unless: 1. Payment was refused on that account; 2. The smaller amount would have been paid if demanded.   And the burden of proof of these facts is on the defendants.

9. That sufficient notice of presentment and non-payment was given, unless the defendants were actually damaged thereby, and the burden of proof of this is also on them. Byles on Bills [213–217]; Story on Bills, § 390; Chitty on Bills, 299; Thompson on Bills, 332, *et seq.*; Smith's Merc. Law, 309; 1 Parsons on Notes and Bills, 474; *Shelton et al.* v. *Braithwaite,* 7 M. & W. 436; *Stockman* v. *Parr,* 11 M. & W. 809; *Mills* v. *Bank of U. S.,* 11 Wheaton 431; *Bank of Alexandria* v. *Swann,* 9 Peters, 33; *Ontario Bank* v. *Petrie,* 3 Wend. 456; *Bank of Rochester* v. *Gould,* 9 Wend. 279; *Cayuga Bank* v. *Warder,* 1 Coms. 413; S. C. 2 Seld. 9; *Young* v. *Lee,* 18 Barb. 187; *Hodges* v. *Shuler,* 24 Barb. 68; *Tobey* v. *Lenning,* 2 H. (Penn.) 483.

As to checks passing through Clearing-house.   *Prideaux* v. *Criddle,* 4 L. R. Q. B. 455; *Merchants' Bank* v. *Eagle Bank,* 101 Mass. 291.

*Hoadly, Jackson & Johnson,* and *Collins & Herron,* for defendants, made the following points.

1. That by the custom of the Cincinnati banks, checks deposited after 1:45 P. M. of each day are at the risk of the depositors and not collectible until the ensuing day. Hence, it follows that checks deposited before 1:45 P. M. are to be presented on the day of deposit and not later.

2. The check sued on was in fact presented and payment demanded, as partly made, on the day of its deposit (August 25). The Clearing-house was a proper place for such presentment and demand. *Reynolds* v. *Chettle*, 2 Campb. 596; *Harris et al.* v. *Packer*, 3 Tyrrwhitt, 370. It was presented at the Clearing-house and payment in fact demanded. It was, therefore, on that day either paid or refused payment. No sufficient notice was ever given of such refusal. Story on Notes, section 350; 1 Parsons on Notes and Bills, 468; *Strange* v. *Price*, 10 Ad. & El. 125; *Townsend's Adm'r* v. *Lorain Bank*, 2 O. St. 345.

3. The surrender of the checks on Homans & Co. to them, and the drawing of a Clearing-house check, in favor of the Merchants' Bank, for the balance due it after settlement at the Clearing-house on August 25, constitute in law a payment of the checks drawn upon Homans & Co. and sent to the Clearing-house by the Merchants' Bank, so as to release the indorsers therefrom. Story on Notes, sections 242 and 389; Byles on Bills, 164; Chitty on Bills, 434; 1 Parsons on Notes and Bills, 367; *King* v. *Holmes*, 11 Penn. St. 456.

4. The demand and notice on August 26 were insufficient, because the entire amount payable by the face of the check was demanded, whereas the counter checks held by Homans & Co., and actually surrendered to the Merchants' Bank the previous day, constituted a credit on said check reducing the amount thereof. A demand for more than can legally be collected is not sufficient to put the drawer in the wrong or charge the indorser. 1 Parsons on Notes and Bills, 367; *Vergennes Bank* v. *Cameron*, 7 Barb. 143; *Whitwell* v. *Johnson*, 17 Mass. 449.

HAGANS, J.   It is apparent that the principal object in the establishment of the Clearing-house is to facilitate exchanges between its members.   It is no longer necessary there should be a settlement by each bank with every other at their respective counters.   It is a mere rendezvous of bankers' clerks, the manager a disinterested party whose salary is paid by each bank in proportion to its capital. The debit and credit balances on the books of the Clearing-house are not balances owing to or due from it.   There is a manifest intention to make the Clearing-house totally irresponsible; and whether that intention can be effected in a proper case, the court is not now to consider.

The plaintiff, who was the holder of the check drawn by the defendants, had until the next day to present it for payment to Homans & Co.   This we hold to be the law, according to the text-books and a very great number of decisions of the highest courts in this country and in England.

If the plaintiff had not passed the check through the Clearing-house, but presented it at the counter of Homans & Co., on the 26th of August, 1869, the day after its date, and had demanded payment, and it had been refused, and the defendants were notified thereof, it is admitted the defendants would be liable.

Was not this, in fact, done?   The defendants claim:

1. That there was presentment and demand on the 25th of August to Homans & Co., at the Clearing-house, and that the check was either paid or dishonored.   If paid, that is an end of the defendants' liability.   If not paid it was dishonored, and defendants should have been notified, and the parties failing in that, defendants are discharged of damages.

2. That it was partly paid on the 25th of August, and a novation and postponement of the balance occurred, from which it is argued defendants are discharged.

3. That the drawers are not bound, because there was not a good demand on Homans & Co. on the 26th of August; that the demand was for too much.

The first proposition made by the defendants assumes that what was done at the Clearing-house was a payment of this check so as to discharge the drawers. This proposition also involves one of the same questions that is presented in the second proposition. We think that it can not be said that the check was paid on the 25th of August, though it was delivered to Homans & Co., by them treated as canceled, and charged up to the defendants' account on their books. But we think a reference to the articles of association of the Clearing-house plainly shows that the manager's warrants were not intended to be regarded as payment; for the Clearing-house, as such, had no balances anywhere in which it had any interest and upon which it could draw. The association was, in no event, to be responsible, and the articles provide for this case. Under the very circumstance happening, the manager's warrant was returned, and the check sued on obtained according to the articles of association. It was clearly not intended to change the rights and obligations of the respective members of the association. On the contrary, it was intended that they should be in the same position, and no better or worse than on the old system, where settlements were made at the counter of the banks. Its warrants are not negotiable, and in this and other respects already mentioned, the warrants have not the characteristics of ordinary bank checks. They can not be regarded as payment until actually paid. Even taking an ordinary bank check is not always regarded as payment of a bill of exchange until actually paid. (Byles on Bills, 17.) And the delivery of a check to Homans & Co., and its cancellation and charge to defendants' accounts, does not vary the rights of the parties. In all the cases referred to, the principle that the delivery of the check discharges the drawer, goes upon the fact that thereby the holder would be disabled from producing it when he calls upon the drawer. But here the holder obtained the check, and demanded payment and protested it. And the cancellation by Homans & Co. could make no difference, nor add to the

effect of its previous delivery, nor yet its previous debit to defendants' account. Homans & Co. did these things in their own wrong, and it was not in the power of the plaintiff to prevent them.

The check of a third person, received on the surrender of a note, without an express agreement that it shall be received in payment, is not payment, if the check is dishonored, and the fact that the check sued on was delivered up, charged, and canceled, is not conclusive that it was received absolutely and paid.

There must be proof that it was intended that the manager's warrant should be payment, or that it was so agreed by the parties, or that the *laches* of the creditor has been an injury to the debtor, none of which conditions appear in this case. *Merrick* v. *Bowry*, 4 O. S. 60.

We do not think, as this Clearing-house is constituted, that what was done there on the 25th of August can be said to be a presentment and dishonor of the check sued on. There is no evidence to sustain such a hypothesis. On the contrary, the check was received by Homans & Co., and charged up against the defendants on their books. We have seen that this transaction did not constitute a payment, nor yet a novation. And that there was not any *laches* to the loss of the defendants.

It is said, however, secondly, this check was partly paid on the 25th, by the surrender to plaintiff of the check for $581, held by Homans & Co. upon them that day, and that thus the transaction amounted to a novation, so that defendants were discharged. But this check was substantially returned to the Clearing-house on the 26th, and the whole transaction stood as it did before the checks were exchanged, the plaintiff receiving back $547, its proportion of the surplus left after making good the manager's dishonored warrant on Homans & Co. Besides, we do not think we ought to give any such effect as that claimed to the operations of the Clearing-house.

There was not the substitution of any new security, for

these warrants of the Clearing-house were not checks legally, and of themselves amounted to nothing unless paid.

It is said, thirdly, that the check sued on ought to have been credited with the $581, the amount of the check held by Homans & Co., and a demand made on Homans & Co. for the difference only, and that, therefore, the presentment and demand are not good. But this claim for $581 was substantially surrendered to the Clearing-house. Homans & Co. made no such objection at the time, and it is incumbent on the defendants to prove that the smaller amount would have been paid, and they were not misled. Besides, the plaintiff took the check sued on in the usual course of business, to be collected for the depositor. If it were not paid, and the plaintiff performed its duty, though credited to the depositor on the books of the plaintiff, the plaintiff would have returned it to the depositor. The plaintiff was the mere agent for collection, and when it presented that check to Homans & Co., the alleged offset was not in the same right. It would not have been equitable to have required the plaintiff to credit the check which Homans & Co. had held against it. It is evident that defendants, on the 26th of August, so regarded it, as they offered to pay the whole amount, and were only prevented by the fact that the plaintiff had not yet got possession of it from the Clearing-house. The presentment and demand on the 26th were not only duly made, but were in time; and as the parties consent to credit the smaller check, the amount may be credited.

The Clearing-house is not only convenient, but useful, and its operations are approved by experience, and have been recognized by the courts in England, and perhaps in this country.

The defendants must be held liable, and judgment may be taken, less the credit agreed upon.

Judgment for the plaintiffs.

The counsel for the defendant in this case made application to the Supreme Court for leave to file a petition in error, which, on consideration, was refused.